UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DINO C. HAIDAS,                      )
          Plaintiff,                 )
                                     )
          v.                         )    C.A. No. 08-11274-MLW
                                     )
MICHAEL J. ASTRUE, Commissioner,)
          Defendant.                 )

MEMORANDUM AND ORDER

WOLF, D.J.                                    March 31, 2010

I.   INTRODUCTION

Plaintiff Dino C. Haidas filed a motion to reverse and remand the decision of the Commissioner of the Social Security Administration denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income under 42 U.S.C. §423 and 42 U.S.C. §1383(c) of the Social Security Act. Defendant Commissioner of Social Security Michael J. Astrue filed a motion to affirm the decision. For the reasons discussed below, plaintiff's motion to reverse and remand is being denied and the defendant's motion to affirm the decision is being allowed.

II.   FACTS AND PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income on March 14, 2006. Plaintiff alleged a disability arising from severe psychiatric difficulties. Defendant denied plaintiff's application on May 3, 2006. On July 17, 2006, defendant, after reconsideration, again denied the application.

1

An administrative hearing was held before Administrative Law Judge ("ALJ") Peter J. Martinelli on September 7, 2007. On November 30, 2007, the ALJ denied plaintiff's application, finding that plaintiff did not meet the requirements of the "five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. §§404.1520(a) and 416.920(a)" and, therefore, was not disabled. Administrative Transcript ("Tr.") at 38. Steps one through five address whether: (1)the claimant is engaging in substantial gainful employment; (2) has a medically determinable impairment; (3) this impairment meets the criteria listed in 20 C.F.R. 404 Subpart P, Appendix 1; (4) claimant's residual functional capacity allows him to perform past work; and (5) the claimant is able to do any other work. Tr. at 38-39.

The ALJ found that plaintiff satisfied steps one and two because he was not engaged in substantial gainful employment and suffered from a schizoaffective disorder. Tr. at 39. At step three, the ALJ determined that such a disorder does not meet or medically equal one of the listed impairments in 20 C.F.R. 404 Subpart P, Appendix 1 and, therefore, did not automatically render the plaintiff disabled. Tr. at 40. The ALJ continued to step four and found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations. Tr. at 40-42. Specifically, he "is limited to simple, unskilled work which requires no more than

2

occasional interaction with coworkers or supervisors, and none with the general public." Tr. at 40.  Because the ALJ found at step four that plaintiff had the residual capacity to perform past work and was not disabled, he did not continue to step five.  Tr. at 39, 42.

The ALJ's decision became final when plaintiff's request for review was denied by the Appeals Council on June 12, 2008. Plaintiff filed the instant petition on February 24, 2009, essentially alleging improper procedures at step four. Plaintiff claims that the ALJ's decision should be reversed based on the opinion of plaintiff's treating psychiatrist or, in the alternative, remanded due to the following errors: (1) lack of a legally sufficient explanation why plaintiff's testimony was not credible; and (2) lack of substantial evidence supporting the contention that plaintiff can return to past employment.  On April 22, 2009, the defendant filed a motion to affirm the decision.

III. ANALYSIS

"Judicial review of Social Security administrative determinations is authorized by 42 U.S.C. §405(g)." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court's review of Social Security administrative determinations is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996)); see 42 U.S.C. §405(g).

"The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. §405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35 (citing DaRosa v. Secretary, 803 F.2d 24, 26 (1st Cir. 1986)). The ALJ's decision must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).

A.   The Treating Psychiatrist Testimony

Plaintiff argues that the ALJ did not base his finding of functional capacity on expert medical opinion. Rather, he alleges, the ALJ relied on his own assessment and, in doing so, failed to provide a legally adequate analysis for declining to give appropriate weight to the opinions of plaintiff's treating psychiatrist.

Pursuant to 20 C.F.R. §404.1527(d), the ALJ "will evaluate every medical opinion" he receives "[r]egardless of its source" unless a treating physician's opinion is given controlling weight. For a treating physician's opinion to be given controlling weight, it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and must be consistent with other substantial evidence in the case record. See 20 C.F.R.

§404.1527(d)(2).

Here, the ALJ did not give the treating physician's opinion controlling weight because, the ALJ found, his opinions were "inconsistent with and unsupported by his own office notes (see Exh. 16F-18F." Tr. at 42, 265-291; see 20 C.F.R. §404.1527(d)(2). The treating physician's opinion indicated the presence of debilitating symptoms, including, for example, recurrent severe panic attacks at least once a week, persistent irrational fear, and generalized anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning. See Tr. at 271. The treating physician's opinion indicates that plaintiff experiences delusions, possible hallucinations, and poor ability to understand, concentrate, and interact with co-workers and supervisors. Tr. 283, 290. The treating physician's opinion asserted that plaintiff is subject to marked limitations in daily living activities, social function, and maintaining concentration, persistence and pace. See Tr. at 275.

These severe symptoms and marked limitations are not generally articulated in the treating physician's notes. See generally Tr. 194-204, 226-233, 255-58, 292-95. The notes describe some unusual behavior, such as the wearing of dark glasses indoors, ambiguous speech, and plaintiff's statements that he was feeling anxious and suffering from excessive sleep and feelings of depression. See, e.g., Tr. at 198, 230, 257, 258. However, the notes consistently

indicate objective findings of proper orientation, appropriate affect, speech normal in volume and content, no looseness of association or flight of ideas, fair insight and judgment, and a lack of overt psychosis and suicidal or homicidal ideation.  See Tr. at 194-204, 226-233, 255-58, 292-95.  The notes indicate at various times that plaintiff was "doing well," had "[n]o major problems at home or at work," and had a "pleasant" and "cooperative" demeanor.  See Tr. at 196, 200, 202, 226, 298.  In June, 2007, just three months prior to the hearing before the ALJ, the notes describe plaintiff as "doing well," as "pleasant" and "cooperative," and as "overall . . . okay" despite concern for the health of an ailing family member.  Tr. at 294.  Accordingly, given that the notes generally do not document the symptoms and limitations expressed in the opinion evidence, a reasonable mind could accept that the treating physician's opinion is inconsistent with the circumstances described in the notes and, therefore, this inconsistency adequately supports the ALJ's decision to not give the treating physician's opinion controlling weight.  See 20 C.F.R. §404.1527(d)(2); Ramos v. Barnhart, 119 Fed. App'x 295, 296 (1st Cir. 2005).

When the treating physician's testimony is not controlling, the ALJ must look to the following factors to determine the weight of the medical testimony: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment

relationship; (3) supportability; (4) consistency; and (5)
specialization. <u>See</u> 20 C.F.R. §404.1527(d). However, "it is the
[Commissioner's] responsibility to choose between conflicting
evidence." <u>Burgos Lopez v. Sec'y of Health and Human Servs.</u>, 747
F.2d 37, 41 (1st Cir. 1984). The ALJ may also rely on the reports
of non-examining physicians, and there is no <u>per se</u> rule requiring
that greater weight be given to the treating physician than to a
non-treating physician. <u>See</u> 20 C.F.R. §404.1527(d); <u>Tremblay v.
Secretary of Health and Human Servs.</u>, 676 F.2d 11, 13 (1st Cir.
1982); <u>Thomas v. Sec'y of Health and Human Servs.</u>, 659 F.2d 8, 10
n.1 (1st Cir. 1981); <u>cf. Evangelista v. Sec'y of Health & Human
Servs.</u>, 826 F.2d 136, 144.

    Plaintiff cites cases such as <u>Newton v. Apfel</u>, 209 F.3d 456
(5th Cir. 2000), for the proposition that, in giving the treating
physician's opinion little weight, the ALJ must expressly address
the each of the factors listed in 20 C.F.R. 404.1527(d)(2).
However, the First Circuit has implicitly rejected this proposition
and upheld rejection of a treating physician's opinion where it is
not corroborated by clinical studies or findings and is refuted by
the rest of the record evidence. <u>See Morales v. Comm'r of Soc.
Sec.</u>, 2 Fed. App'x 34, 36 (1st Cir. 2001)(affirming, based on
inconsistency and lack of corroboration, decisions not to give
controlling weight to treating physician opinion and to reject the
opinion); <u>see also</u> <u>Ramos</u>, 119 Fed. App'x at 296 (holding ALJ was

justified in according treating psychiatrist's report little weight where it was inconsistent with the bulk of the medical evidence and not supported by any progress notes or clinical or laboratory findings); Dietz v. Astrue, C.A. No. 08-30123, 2009 WL 1532348, at *7 (D. Mass. May 29, 2009)("Of course, the ALJ was not required to discuss each of the regulatory criteria; the First Circuit has upheld the rejection of treating physician opinions on the basis of select factors."); Frost v. Barhart, No. 03-215, 2004 WL 1529286, at *6 & n.5 (D. Me. May 7, 2004)("Plaintiff does not cite, nor do I find, First Circuit caselaw indicating that there are circumstances under which an administrative law judge must slavishly discuss each of the section 404.1527(d)(2) criteria.").

Here, the ALJ concluded that plaintiff has the residual functional capacity to perform simple, unskilled work which requires no more than occasional interaction with coworkers or supervisors, and none with the general public.  Tr. at 40. In making this determination, the ALJ permissibly did not give great weight to the treating physician's opinion because it was not supported by, and indeed was inconsistent with, other record evidence, specifically the treating physician's own office notes. Tr. at 42; see Morales, 2 Fed. App'x at 36; Frost, 2004 WL 1529286, at *6-7.

Experts who did not examine the plaintiff but did review the medical record found that plaintiff had no significant limitations

in his ability to remember and perform simple tasks, to sustain an
ordinary routine without special supervision, and to accept
instructions and criticism.  Tr. at 206-07, 235-236.  The non-
examining experts also found that plaintiff had moderate
limitations in his ability to carry out detailed tasks, to maintain
concentration for an extended period of time, and to interact
appropriately with coworkers and the public.  Id.  The ALJ
expressly considered the opinions of the non-examining experts, and
it is evident that these opinions support and correlate quite
closely to the ALJ's finding.  See Tr. at 42.  Accordingly, the ALJ
properly elected not to give great weight to the treating
physician's opinion and to accept the medical opinion of non-
examining experts.  See 20 C.F.R. §§404.1527(d)(1)-(6),
404.1527(d)(4); Ramos, 119 Fed. App'x at 296-97 (citing Evangelista
v. Sec'y of Health and Human Servs., 826 F.2d 136, 144 (1st Cir.
2005)).

     Plaintiff argues that the ALJ was obligated to recontact the
treating physician.  However, that was not required in this case,
where the ALJ rejected the treating physician's opinion as wrong
and not because the opinion was so incomplete that it could not be
considered.  See 20 C.F.R. §404.1512(e); White v. Barnhart, 287
F.3d 903, 908 (10th Cir. 2001)(amended opinion upon denial of
rehearing).

     In view of the foregoing, the ALJ's decision not to give

controlling weight to the treating physician's opinion was
justified and his reasoning was adequately explained. See Nguyen,
172 F.3d at 35.

B.    The Alleged Improper Credibility Finding

Plaintiff argues that the ALJ did not provide a legally
sufficient explanation for his finding that his own testimony at
the hearing was not credible as required by 20 C.F.R. §404.1529(c).
The ALJ may find a claimant is not credible, but the conclusion
"must be supported by substantial evidence and the ALJ must make
specific findings as to the relevant evidence he considered in
determining to disbelieve [the claimant]." DaRosa, 803 F.2d at 26.

The ALJ found that plaintiff's testimony was not credible
because "[t]here [was] a substantial disparity between the
claimant's complaints and the objective medical findings contained
in the record." Tr. at 42.  In reaching this conclusion, the ALJ
explained that "the claimant's statements concerning the intensity,
persistence and limiting effects of [his symptoms]. . . [were not]
reasonably consistent with . . . medical findings . . . Moreover,
the claimant's ability to manage a wide range of daily activities
belie[d] his allegation of total disability." Tr. at 42.  The ALJ
gave specific descriptions of these medical findings and daily
activities, including benign mental status examinations,
plaintiff's self report of moderate limitations on daily
activities, independent performance of personal care tasks, and

effective treatment with medications.  <u>See</u> Tr. at 40, 42.

A reasonable mind could accept that, based on the disparity between the claimant's testimony and the objective medical findings, the plaintiff was not credible.  <u>See</u> <u>Rodriquez</u>, 647 F.2d at 222.  The ALJ also made the necessary specific findings as to the relevant evidence considered in determining to disbelieve the plaintiff.  <u>See</u> <u>DaRosa</u>, 803 F.2d at 26.  Therefore, the ALJ's decision to disbelieve the claimant's testimony was based on substantial evidence and was adequately explained.  <u>See</u> <u>Rodriquez</u>, 647 F.2d at 222; <u>Nguyen</u>, 172 F.3d at 35.

### C.   Ability to Return to Past Employment

Plaintiff contests the ALJ's finding that substantial evidence exists indicating that he is capable of returning to his past employment.  Plaintiff argues that the ALJ failed to properly consider his testimony regarding the loss of his previous jobs.  Moreover, plaintiff argues that the ALJ improperly considered the vocational expert's testimony because the vocational expert ignored plaintiff's treating physician's medical opinion.

The ALJ must make an assessment of a claimant's residual functional capacity and a claimant's past relevant work.  <u>See</u> 20 C.F.R. §404.1520(d)(4)(iv).  If the claimant can still do his past relevant work, the ALJ will find that the claimant is not disabled.  <u>See</u> <u>id.</u>  In making this fourth step appraisal, the ALJ is entitled to credit a claimant's own description of his former job duties and

functional limitations, but has some responsibility to develop the record independently.  See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).

In order to satisfy this responsibility, it is appropriate for the ALJ to rely on the testimony of a vocational expert to provide the necessary evidence to link a claimant's residual skills with the requirements of various jobs in the national economy.  See Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).  However, the ALJ must ask the appropriate hypothetical for the vocational expert to consider.  See id. A hypothetical is appropriate if the question accurately reflects the objective medical findings in the record.  See Arocho, 670 F.2d at 375; Perez v. Sec'y of Health and Human Servs., 958 F.2d 445, 447 (1st Cir. 1991).

The ALJ provided the vocational expert with a hypothetical which reflected the medical and functional capacity findings on the record.  See Tr. at 72.  He asked the expert to consider: "a male 44 years of age with an 11th grade education . . . [with] a schizoaffective disorder with a history of mental impairments" and with a functional capacity the same as that assessed for plaintiff. Tr. at 72.  Thus, the hypothetical was proper.  See Arocho, 670 F.2d at 375; Perez, 958 F.2d at 447.

Having determined that the ALJ properly relied on the testimony of a vocational expert, the ALJ's conclusion will be

affirmed if his decision was supported by substantial evidence. Cf. Arocho, 670 F.3d at 375. After finding that plaintiff's residual functional capacity allowed him to perform work, the ALJ explained that "[t]he vocational expert characterized the claimant's past work as exertionally ranging from light to medium, and all unskilled. He opined that a hypothetical individual with the above residual functional capacity and the claimant's vocational profile could perform the following past jobs: mail sorter, on an 'after hours' basis . . . and night maintenance or stock worker." Tr. at 42. The vocational expert's testimony constitutes sufficient evidence from which a reasonable mind might conclude that the plaintiff can return to past work and is not disabled. See Nguyen, 172 F.3d at 35. Thus, there was a proper basis for the ALJ's decision on this issue.

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion to Reverse and Remand (Docket No. 14) is DENIED.

2. Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket No. 16) is ALLOWED.


                              /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE